·(March 23, 1897.)

## BLAINE COUNTY v. SMITH.
[48 Pac. 286.]

BOARD OF ACCOUNTANTS APPOINTED BY LAW.—A board of accountants whose appointment is provided by law, and whose duty it is to as-certain the amount of indebtedness of a certain county at a cer-tain time, and apportion such indebtedness among said and other named counties, on a given basis, performs clerical acts, and such board of accountants cannot defeat the object for which it was appointed by attempting to pass, directly or indirectly, on the va-lidity of such indebtedness.

MANDAMUS—MUNICIPAL CORPORATIONS.—When a duty is enjoined by law upon the officers of a municipal corporation (a county), and

such officers fail or refuse to perform the duties so enjoined upon them, *mandamus* will lie to compel the performance by such officers of the duties so enjoined upon them, and in such case the court will, to avoid multiplicity of suits and repeated applications for peremptory writs, direct full compliance by all officers of such corporation properly before the court with the requirements of the law under which it is their duty to act.

(Syllabus by the court.)

Original proceeding in supreme court by writ of mandate.

S. B. Kingsbury, for Plaintiff.

No brief filed.

F. S. Dietrich, for Defendants.

The record shows that when the bonds in question were issued there were —— dollars in the treasury of Alturts county, applicable to the payment of the floating debt which the bonds were to fund. This had to be first applied, and valid bonds to be issued only for the balance. (*Bannock Co. v. Bunting,* 3 Idaho, 156, 37 Pac. 277; Sess. Laws 1895, sec. 3603, p. 57.) All of the apparent indebtedness described in the accountant's report was void, in that the obligations were contrary to and in violation of the act of Congress of July 30, 1886, and especially sections 3 and 4 thereof as found on page 33 of the Revised Statutes of Idaho. Counsel says the county, having reached its limit, could not exist or continue its business without incurring debt. But the language of the act is most emphatic, namely: "Become indebted in any manner or for any purpose to any amount." The decisions make no distinction between indebtedness imposed and that voluntarily or unnecessarily incurred. The balance of the bonds mentioned in the accountant's report are void for the following reasons: 1. They were sold for cash, and not exchanged. Thus a new indebtedness was incurred. (*Bannock Co. v. Bunting,* 4 Idaho, 156, 37 Pac. 277.) That the word "refund" is never used to designate the process of putting a varied floating warrant indebtedness into the form of bonds. I have found no such case or application. I cite as throwing some light on

the question *City of Cadillac v. Woonsocket,* 58 Fed. 935, 7 C. C. A. 571; *Coffin v. City of Indianapolis,* 59 Fed. 221.

QUARLES, J.—By an act of the legislature of the territory of Idaho, approved February 7, 1889 (Acts 15th Sess., p. 35), the county of Elmore was created out of a portion of the theretofore existing territory of Alturas county, the county of Logan created out of another portion, and still another portion was added to Bingham county. Sections 7 and 8 of said act are as follows:

"Sec. 7. The indebtedness of Alturas county at the date ·of the passage and approval of this act shall be apportioned between the counties of Alturas, Elmore, Logan and Bingham counties, in the same proportion that the taxable property of the three counties have acquired from Alturas county, and that the four counties bear to each other as shown by the assessment-roll of the year 1888 in Alturas county, and at their regular meeting in April, 1889, the boards of commissioners ·of the four counties mentioned shall, respectively, appoint each a competent accountant who shall meet at the town of Hailey and proceed to audit and ascertain the amount of indebtedness to be paid by each of the aforesaid counties to Alturas county, and they shall apportion all moneys in the treasury of said Alturas county in the same proportion that they apportion the debt, but in apportioning the debt and bonds, they shall make no apportionment of the bonds issued for the erection of the courthouse or other public buildings in Alturas county, nor of any. cash on hand to pay said bonds and interest, and they shall make out four certificates, one to be delivered to the board of commissioners for each county, showing the total indebtedness of Alturas county, its character, whether bonded or otherwise, and also the proportion to be paid by each county, and such accountants shall be allowed a reasonable sum for their services, to be paid by the county appointing each respectively.

"Sec. 8. Immediately after filing of the certificate of the proportion of the indebtedness named in the preceding section 7, the auditors of Elmore and Logan and Bingham counties, under the supervision of their respective boards of commis-

sioners, must draw his warrant in sums of $500, but one warrant may be drawn for a less amount in order to pay a fractional part of the debt, and not transferable, and bearing interest at the rate of seven per cent per annum, in favor of Alturas county, to the full amount of the indebtedness apportioned to their respective counties, the interest on said warrants to be paid on first day of January and first day of July in each year at the office of the county treasurer of Alturas county, or at such bank in the city of New York as may be designated by the board of county commissioners of Alturas county, such warrants to be redeemed by each respective county in the following manner: Ten per cent of the total amount issued to be paid in eight years from the date of issue, and ten per cent annually thereafter, until all of said warrants are paid, making the last warrants redeemable eighteen years from the date of issue, and the money so received from the counties of Elmore, Logan and Bingham by Alturas county, shall be applied only to the payment of the present indebtedness of Alturas county, or the securities into which it has been funded."

It appears that the officers of Alturas county utterly disregarded the duty enjoined upon them by said act, and failed for more than three years to appoint such accountant, and that in 1894 the counties of Elmore, Logan and Bingham (defendant county) united in a proceeding in this court, and procured, in this court, in May, 1894, a writ of mandate compelling the appointment of said accountants to apportion said indebtedness. (See *Elmore Co. v. Alturas Co.,* 4 Idaho, 154, 37 Pac. 349.) Pursuant to the requirements of said writ of mandate, each of said counties appointed its accountant, and the four accountants met at Hailey on the sixteenth day of August, 1894, and ascertained and apportioned said indebtedness, their report being in words and figures as follows:

"We, the undersigned, accountants for the counties of Alturas, Bingham, Elmore and Logan, duly appointed in accordance with an act of the legislative assembly of the territory of Idaho entitled 'An act creating and organizing the counties of Elmore and Logan and defining the boundaries of Bingham and Alturas counties,' approved February 7, 1889, and in ac-

cordance with the mandate of the supreme court of the state of Idaho, issued by the said court, June 1, 1894, did meet at the town of Hailey on the twenty-third day of July, 1894, and, after having duly qualified as such accountants, proceeded to apportion the indebtedness of Alturas county in accordance with said act. And we hereby certify:

"1. That the total valuation of all assessable property in the county of Alturas for the year 1888, as appears from the assessment-roll of said county for said year, is $3,787,533; that the value of said property lying within the limits of the county of Bingham after division is $85,770; that the value of said property lying within the limits of the county of Alturas, after division, is $890,432; that the value of said property lying within the limits of the county of Elmore, after division, is $881,660; that the valuation of said property lying within the limits of the county of Logan, after division, is $1,929,671.

"2. That the amount of moneys in the treasury of the county of Alturas on the seventh day of February, 1889, is $36,338.39. Of this sum there was apportioned during the year 1889 the following amounts: To the territorial fund, $2,271.66; to the school fund, $8,997.09; to the bond tax fund to meet July interest, $7,817.98=$19,096.73; leaving a net balance to be apportioned, $17,251.66. Of this amount Alturas' portion is $4,055.80; Bingham's portion is $390.65; Elmore's portion is $4,015.83; Logan's portion is $8,789.38.

"3. That the floating indebtedness of Alturas county on the seventh day of February, 1889, is as follows: Outstanding general road and bridge warrants and interest to February 7, 1889, $10,104.94; outstanding district road and bridge warrants, being drawn on road districts lying outside the boundaries of Alturas county after division and interest thereon to February 7, 1889, $6,697.21; outstanding current expense fund warrants and interest to February 7, 1889, $26,049.44; outstanding hospital indebtedness $262.50; total floating indebtedness, February 7, 1889, $43,114.09. The total floating indebtedness is apportioned as follows: To Alturas, $10,135.92; to Bingham, $976.32; to Elmore, $10,036.10; to Logan, $21,965.75=$43,114.09.

"4. We find that Alturas county delinquent tax of 1888, amounting to $4,263.20, was collected in 1889; and on February 7, 1889, we find that Custer county warrants were held by Alturas county to the amount of $2,000, making the sum of $6,263.20 to be apportioned. Of this amount Alturas' portion is $1,472.46; Bingham's portion is $141.83; Elmore's portion is $1,457.93; Logan's portion is $3,191. These several amounts, added to the amounts of cash in the treasury of Alturas county and already apportioned, are as follows: Alturas' portion is $5,528.26; Bingham's portion is $532.48; Elmore's portion is $5,473.76; Logan's portion is $11,980.38. Then, deducting the several amounts representing the cash in the treasury of Alturas county on the seventh day of February, 1889, from the floating indebtedness apportioned to the several counties, we find that the respective counties of Alturas, Bingham, Elmore and Logan should pay of the floating indebtedness the amounts following, to wit: Alturas county should pay $28,122.54; Bingham county should pay $443.84; Elmore county should pay $4,562.34; Logan county should pay $9,985.37; total, $43,114.09. And the counties of Bingham, Elmore and Logan should pay to Alturas of said floating debt the following sums: Bingham, $443.84; Elmore, $4,562.34; Logan, $9,985.37.

"5. That bonds of Alturas county, illegal and void, as we are advised by the attorneys of our respective counties, were issued and were extant on the seventh day of February, 1889, as follows: Nineteen bonds, numbered 1 to 19, inclusive, bearing date July 1, 1887, for $1,000 each, at the rate of six and one-half per cent interest, said interest payable semi-annually on January 1st and July 1st of each year, making a total issue of $19,000, and all mature on July 1, 1897. If it should ultimately be determined that said bonds are legal and valid, then the same should be paid by said counties as follows: Alturas county should pay $4,466.81; Bingham county should pay $430.26; Elmore should pay $4,422.82; Logan county should pay $9,680.11; total, $19,000. Six bonds, numbered 1 to 6, inclusive, second series, bearing date July 1, 1887, for $1,000 each, seven per cent interest, said interest payable semi-annually on January 1st and July 1st of each

year, making a total issue of $6,000, of which $4,000 is pay-
.able July 1, 1897, and $2,000 thereof on July 1, 1898. If
it should be determined that said bonds are legal and valid,
then the same should be paid by said counties as follows: Al-
turas county should pay $1,410.57; Bingham county should
pay $135.87; Elmore county should pay $1,396.68; Logan
county should pay $3,056.88; total, $6,000. Two hundred
and twenty-one· bonds, numbered 20 to 240, inclusive, for
$1,000 each, bearing date January 2, 1888, at seven per cent
interest, said interest payable semi-annually, July 1st and
January 1st of each year, making a total issue of $221,000,
and mature as follows: Nos. 20 to 23, inclusive, $4,000, Janu-
ary 1, 1898; Nos. 24 to 48, inclusive, $25,000, January 1,
1899; Nos. 49 to 72, inclusive, $24,000, January 1, 1900; Nos.
73 to 96, inclusive, $24,000, January 1, 1901; Nos. 97 to 120,
inclusive, $24,000, January 1, 1902; Nos. 121 to 144, inclu-
sive, $24,000, January 1, 1903; Nos. 145 to 168, inclusive,
$24,000, January 1, 1904; Nos. 169 to 192, inclusive, $24,000,
January 1, 1905; Nos. 193 to 216, inclusive, $24,000, January
1, 1906; Nos. 217 to 240, inclusive, $24,000, January 1, 1907.
If it should be determined that said bonds are legal and valid,
then the same should be paid by said counties as follows:
Alturas county should pay $51,965.09; Bingham county should
pay $5,004.65;. Elmore county should pay $51,444.27; Logan
county should pay $112,594.99; total, $221,000. Ninety
bonds, numbered 241 to 330, inclusive, bearing date April 21,
1888, for $500 each, at seven per cent interest, said interest
payable semi-annually, July 1st and January 1st of each year,
making a total issue of $45,000, and mature as follows: Nos.
241 to 249, inclusive, $4,500, April 21, 1898; Nos. 250 to
258, inclusive, $4,500, April 21, 1899; Nos. 259 to 267, in-
clusive, $4,500, April 21, 1900; Nos. 268 to 276, inclusive,·
$4,500, April 21, 1901; Nos. 277 to 285, inclusive, $4,500,
April 21, 1902; Nos. 286 to 294, inclusive, $4,500, April 21,
1903; Nos. 295 to 303, inclusive, $4,500, April 21, 1904;
Nos. 304 to 312, inclusive, $4,500, April 21, 1905; Nos. 313
to 321, inclusive, $4,500, April 21, 1906; Nos. 322 to 330, in-
clusive, $4,500, April 21, 1907. If it should be determined
that said bonds are legal and valid, then the same should be

paid by the said counties as follows: Alturas county should pay $10,579.29; Bingham county should pay $1,019.06; Elmore county should pay $10,475.07; Logan county should pay $22,926.58; total, $45,000. We find that of the first nineteen bonds, numbered from 1 to 19, inclusive, bearing the date July 1, 1887, for $1,000 each, at six and one-half per cent interest, that $16,595.38 was sold to E. R. Clark in exchange for warrants of Alturas county, and that $2,404.62 were sold to E. R. Clark for cash, which was paid into the treasury of Alturas county, and applied to the redemption of warrants. Six bonds, numbered 1 to 6, inclusive, second series, bearing date July 1, 1887, for $1,000 each, at seven per cent interest, interest payable semi-annually, January 1st and July 1st, making a total issue of $6,000, were sold to E. R. Clark in exchange for warrants, and were issued under the second subdivision of section 3602 of the Revised Statutes for the purpose of funding indebtedness of Alturas county contracted subsequent to July 30, 1886, and specify on their face for what class of indebtedness they were issued. All other bonds were issued under the provisions of the first subdivision of said section 3602. Of the $500 bonds, numbered from 241 to 330, inclusive, we find that a clerical error in the treasurer's bond register fixes the maturity of said bonds one year earlier than the law will permit, but the record of the board of county commissioners shows that said bonds were issued so that they would mature as follows: Ten per cent from the date of issue in ten years, and ten per cent annually thereafter until all are paid. We find that all interest on these bonds which accrued July 1, 1889, was paid at maturity from funds in the hands of the county treasurer of Alturas county derived from the taxes of the year 1888, and which had been paid into the treasury before July 1, 1889. The interest having been paid up to said July 1, 1889, from resources which were common to all the counties interested, we find the liability for interest on said bonds should commence July 1, 1889, and should be paid by the respective counties, in case the validity of the bonds should be established, in the same ratio as that which we have ascertained and determined, based upon the assess-

ment of 1888, and as shown by this report. All of which is respectively submitted.

"Dated at Hailey, August 16, 1894.

(Signed)    "I. W. GARRET,

"Accountant for Alturas County.

"GEO. F. GAGON,

"Accountant for Bingham County.

"E. C. HELFRICH,

"Accountant for Elmore County.

"WM. E. HEARD,

"Accountant for Logan County."

By an act approved March 9, 1895 (Sess. Acts 1895, p. 87), section 8 of the act of February 7, 1889, set forth above, was amended to read as follows:

"Sec. 8. Immediately after the filing of the certificate [of the proportion of the indebtedness] named in the preceding section [7] the auditors of Elmore and Logan and Bingham counties, under the supervision of their respective boards of commissioners, must draw and issue warrants in favor of Alturas county, to the full amount of the indebtedness apportioned to their respective counties, such warrants to bear date July 1, 1889, to be issued in sums of $500 each (but one warrant may be drawn for a less amount in order to pay a fractional part of the debt), and to be not transferable, and to bear interest at the rate of seven per cent per annum, payable on the first day of January and first day of July in each year at the office of the county treasurer of Alturas county, or at such bank in the city of New York as may be designated by the board of county commissioners of Alturas county. Such warrants are to, and shall, be redeemed by each respective county in the following manner: Ten per cent of the total amount issued shall be paid in eight years from the date of issue and ten per cent annually thereafter, until all of said warrants are paid, making the last of said warrants redeemable eighteen years from the date of issue. The money so received from the counties of Elmore, Logan and Bingham by Alturas county shall be by it applied only to the payment of the present indebtedness of Alturas county, and the securities into which it has been funded. The board of county com-

missioners of the above-named counties shall, at the time they make the tax levy for county and state purposes, in each year, levy also a special tax upon all the taxable property of their respective counties in an amount sufficient to pay the interest on said warrants, and the county assessor of each of said counties shall pay the amount of said tax over to the county treasurer of Alturas county each year and in time to enable said county of Alturas to meet the payments of interest on the funded debt of said county, as the same shall become due. The board of county commissioners of each of said counties of Logan, Elmore and Bingham, shall also and at least one year before the first of said warrants shall become due, levy a special tax sufficient to pay the principal of said warrants, when the same shall become due, and shall levy, also, a tax each year thereafter to pay the principal of the remainder of said warrants as they become due, and year by year shall pay the amounts of such taxes to the county treasurer of Alturas county, until all of said warrants are paid. In case there shall, by said counties or either thereof at any time, be an omission for any cause to levy the aforesaid taxes or any thereof, it shall be the duty of the boards of county commissioners of the counties or county so omitting to make such levy to ascertain the amount of arrearages of principal and interest then due and in addition to the amount levied for the payment of the interest then accruing to levy each year's tax for such additional sum as will pay one year's arrearages of interest or principal or both, beginning with the first year that said interest or principal or both become delinquent and unpaid, and shall continue to levy a similar tax each year and every year until all the arrearages of interest and principal shall be fully paid; provided, that if any of said counties shall so desire they may refund all of said arrearages of interest and principal by the issuance of interest bearing coupon bonds therefor, payable in not less than ten (10) or more than twenty (20) years from the date of issue, bearing interest at not exceeding six (6) per cent per annum, said bonds to be issued in pursuance of law. All money arising from the collection of taxes or the sale of bonds for the purpose of paying the arrearages of principal and interest on said war-

rants shall be paid over to the treasurer of Alturas county in time to enable said county to pay the proportion due from each of said counties of Logan, Elmore and Bingham upon said funded debt of Alturas county."

By act of March 5, 1895 (see Sess. Acts 1895, p. 31), the counties of Alturas and Logan were abolished, and the county of Blaine created, and under the last-named act the plaintiff, Blaine county, became the successor of Alturas county, and assumed the liabilities and succeeded to the rights of Alturas county. The plaintiff applies for a writ of mandate to compel the officers of Bingham county to take such steps as will result in the payment of that portion of the indebtedness of Alturas county aforesaid payable from Bingham county to the plaintiff county, in accordance with said recited acts of the legislature. In its petition the plaintiff avers the appointment of said accountant by the several counties interested; avers the findings of said accountants, and avers that Bingham county is indebted to the plaintiff in the sum of $7,033.68, with interest from July 1, 1889; that the defendants Robert H. Smith, Milen D. Andrus, and James L. Bumgarner are the duly elected, qualified and acting commissioners of Bingham county; that the defendant George F. Gagon is the duly elected, qualified and acting clerk and *ex-officio* auditor of said Bingham county; that the defendant William N. Woodin is the duly elected, qualified and acting treasurer of said Bingham county, and that Wilford D. Huffaker is the duly elected assessor and tax collector of said Bingham county; the failure of the auditor of Bingham county to issue, under the supervision of the board of commissioners of said county, warrants to plaintiff for said sum of $7,033.68, drawing interest from July 1, 1889; the failure of the treasurer to pay plaintiff moneys alleged to have been raised to pay accrued interest on said indebtedness; and that the said defendant commissioners of Bingham county fail and refuse to levy special taxes to pay said indebtedness.

To the petition of plaintiff the defendants demurred on the following grounds, to wit: 1. That a misjoinder of parties defendant appears on the face of said petition, in this, to wit: That the defendants, William N. Woodin and Wilford D. Huffaker, are unnecessary and improper parties to this proceeding;

2. That there is a defect of parties in this, to wit: That Bannock county and Fremont county, and the county commissioners of each of said counties, are necessary and proper parties defendant to this proceeding, in that both of said counties were included in and were a part of Bingham county as it existed on the seventh day of February, 1889. The defendants, by agreement of parties and permission of the court, filed their answer and return, without prejudice to said demurrer, which demurrer was submitted and to be decided with the cause on its merits.

The answer admits the official capacity of the defendants; denies that said accountants found the sum of $7,033.68, or any sum greater than $443.84, due from Bingham county to Blaine county; and specifically denies the other allegations of the petition; and avers affirmative matters which need not, for the reason that such matters are not material to the issues in this cause, be mentioned. A stipulation of facts and certain documentary evidence was introduced on the trial.

We are of the opinion that that portion of the report of said accountants reciting that they were advised that certain bonds mentioned, issued by Alturas county, are void, is surplusage, and of no effect. When, as in the case under consideration, a board of accountants whose appointment is provided for by law, and whose duty it is to ascertain the amount of indebtedness of a certain county, at a certain time, and apportion such indebtedness among such and other named counties, on a given basis, are called upon to and only perform clerical acts, such board of accountants cannot defeat the object for which it was constituted by attempting to pass, directly or indirectly, on the validity of such indebtedness. Notwithstanding the surplusage interjected into the report of said accountants, said report was sufficient, and complied with the requirements of the act of February 7, 1889, and found the proportion of the sum to be paid by Bingham county to plaintiff to be sums aggregating the sum of $7,033.68. And it was the duty of the board of county commissioners of Bingham county to direct and supervise the issuance of warrants of said Bingham county, by the auditor of said Bingham county, to the county of Alturas while in existence, or afterward to the plaintiff, for said

sum, of the denominations mentioned in said act, viz., fourteen for the sum of $500 each, and one for $33.68, all drawing interest from July 1, 1889, bearing interest at the rate and payable at the times and places mentioned in said legislative act.

The defendants contend that a portion of the bonds mentioned in said accountants' report were issued in violation of the act of Congress of July 30, 1886, limiting the amount of indebtedness to be thereafter incurred by any county or other subdivision of any of the territories. The record in this case shows that pursuant to section 3603 of chapter 6 of title 13 of the Revised Statutes of Idaho, as amended by act of March 8, 1895 (Sess. Acts 1895, p. 57), the board of county commissioners of Blaine county did, on the twenty-ninth day of April, 1896, ascertain the indebtedness mentioned in said accountants' report to be valid and legal obligations of said Blaine county, and so ordered; that from said order of said board of commissioners an appeal was taken to the district court of the fourth judicial district, in and for Blaine county, and the said order of the board of commissioners was, by judgment of said district court, affirmed.

We think that Bingham county, owing to the relations that are hereinbefore shown to have existed between it and Blaine county, was charged with notice of the action of the board of commissioners and the said district court in the premises, and should not be permitted in this proceeding to make a collateral attack on the said order of the board of commissioners, or upon the judgment of said district court affirming the said order. If said order of the board of commissioners and the judgment of said district court were erroneous, the proper remedy should have been pursued. In making said order the board of commissioners were acting in a *quasi* judicial capacity, and within the jurisdiction vested in the board by positive law; and by reason of the appeal to said district court said court acquired jurisdiction in the premises and having jurisdiction to act, the correctness or incorrectness of said order of the board of commissioners and the judgment affirming same cannot be questioned in a collateral proceeding.

The first ground of defendants' demurrer to the petition is not well taken. The action of the board of commissioners,

auditor, assessor and collector and treasurer of Bingham county is necessary to a complete settlement of the matters involved in this action. The commissioners have refused to cause the issuance of the proper warrants by the auditor. Now, if this court was to merely direct the said commissioners to supervise and the auditor to draw and deliver the proper warrants, and stop, as counsel for the defendants appear to desire the court to do, in all probability, judging by past experience in the premises, we would be called upon later to direct said commissioners to levy the proper special tax, and still later to direct the assessor and collector to collect such tax, and still later on to direct the treasurer to make payments on said warrants. This is the second time that this matter has been before the court. Some two years ago Bingham county was asking this court to direct the predecessor of the plaintiff to appoint the proper accountant, which this court did. The accountants met, acted and reported, whereupon the county of Bingham lost all desire to further proceed in the matter. The conduct of the officers of both of the counties interested is deserving of censure, and is very much like that of a balky team of horses. While one will the other won't and *vice versa*. The legislative acts which we have recited enjoin upon each of the defendants, as officers of Bingham county, specific duties looking to the payment of the money due from said Bingham county to the plaintiff. To avoid multiplicity of suits and repeated applications for writs of mandate to compel a full and complete settlement of the matters involved, all of the defendants are proper parties, and the court will direct each of them to comply with the requirements of the law under which he is required to act, and thus avoid further vexatious delays and annoyance to the court in regard to the matters in controversy.

The second ground of defendants' demurrer to said petition is not well taken. While it is true that Bingham county has lost much of its territory by reason of the formation of Fremont and Bannock counties out of the same, yet Bingham county is primarily liable to plaintiff for the indebtedness in question, and plaintiff can only look, or be required to look, to Bingham county therefor, and for these reasons Fremont and Bannock counties are neither proper nor necessary parties to this ac-

tion. The act of March 9, 1895, above recited, amending section 8 of the act of February 7, 1889, provides for the contingency that has arisen in this case, and the legislature doubtless had in view the conditions that then existed, with reference to the indebtedness involved herein, when it enacted said amendment. Said act is a special one, and applies directly to the case at bar; hence general provisions of the Revised Statutes do not apply. Bingham county can, under the provisions of said special act, only be required to pay the accruing annual interest, and one year's arrearage interest, each year, but the arrearage interest first accrued must first be paid, and so on, in regular order, until all arrearage interest is paid in full. Under said special act, Bingham county can, if it so desires, refund this debt by the issue of bonds, and pay the indebtedness in question in full, and this it would seem would be the better plan, but such settlement is optional with Bingham county. We find that Bingham county is indebted to. Blaine county in the sum of $7,033.68, with interest thereon from the first day of July, 1889, at the rate of seven per centum per annum, said interest payable on the first day of January and first day of July of each year, and that no part of same has been paid; that the warrants for said indebtedness have not been drawn as required and provided in the act of February 7, 1889; and that the commissioners, auditor, assessor and collector and treasurer of Bingham county have failed and refused to perform the duties required of them, respectively, by law in the premises. We are of the opinion that the demurrer of defendants to the said petition should be overruled, and that a writ of mandate should issue directing the defendants to do and perform the following acts, to wit: The defendants, Robert H. Smith, Milen D. Andrus, and James L. Bumgarner, as commissioners of Bingham county, to cause the defendant George F. Gagon, as auditor of Bingham county, to draw fourteen warrants of said Bingham county, for $500 each, and one for $33.68, all of said warrants as of date July 1, A. D. 1889, drawing interest at the rate of seven per cent per annum, interest payable semi-annually on the first day of January and the first day of July of each year, payable to Blaine county, and payable at the times and places provided by section 8 of the act of February 7,

1889, as amended by the act of March 9, 1895, recited herein; that said defendant commissioners and their successors in office levy special taxes each year, as required by said act, sufficient to pay the accruing interest on said warrants for the year in which the levy is made, together with one year's arrearage interest thereon longest past due, and to provide for the payment of the principal of said warrants as it matures, until the whole of said principal and interest of said warrants is fully paid, the first of said special tax levies to be made at the regular April meeting, A. D. 1897, of said board of commissioners; that the defendant, Wilford D. Huffaker, as assessor and tax collector of Bingham county, and his successor in office, collect all levies of special taxes made to pay interest or principal of said warrants, and pay same to the treasurer of Bingham county; that the defendant William N. Woodin, as treasurer of Bingham county, pay to Blaine county, on said warrants, when issued, any money which may now be in the treasury of Bingham county, if any, which has heretofore been levied and collected to pay on said warrant indebtedness, and that said defendant, as treasurer of Bingham county, and his successor in office, receive from the assessor and collector of Bingham county, and pay on said warrants, as provided in the statutes hereinbefore recited, all special taxes levied and collected for the purpose of paying the interest and principal of said warrants.   It is therefore ordered that said demurrer be overruled, and that a peremptory writ of mandate do issue directed as hereinabove suggested.   Costs of this proceeding awarded to the plaintiff.

Sullivan, C. J., and Huston, J., concur.