(December 18, 1897.)

## BINGHAM COUNTY v. BANNOCK COUNTY.

[51 Pac. 769.]

COUNTY INDEBTEDNESS—DISTRICT COURT TO ASCERTAIN THE AMOUNT DUE FROM NEW COUNTY.—In the organization of a new county out of territory included in an existing county, it was provided by the act of organization that the debt of the old county should be ascertained and apportioned by the district court at its next regular term after the organization of the new county. This was done and the amount found due from the new county duly certified, but there existed at the time an unascertained indebtedness from the old county to another county, which fact was at the same time certified by the district court, together with the further finding that when the amount of such indebtedness was ascertained, the new county would be liable for its portion thereof. *Held,* that the new county was liable for its portion of such indebtedness when the amount thereof was ascertained.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

H. V. A. Ferguson, for Appellants.

On the sixth day of March, 1893, the governor of Idaho approved an act of the legislature entitled "An act to create and organize the county of Bannock, to fix the county seat of said county, to provide for the apportionment of the indebtedness of Bingham county between Bingham county and Bannock county," and some other incidental matters. (Laws 1893, p. 170.) Two days before that, to wit, March 4, 1893, the governor had approved an identical act for the creation of Fremont county, also carved out of old Bingham, and making the same provision for the apportionment of Bingham's indebtedness with the new county of Fremont. (Laws 1893, p. 94.) The legislature fixed upon a swift and summary method for ascertaining the amount of the handicap with which the new counties should be burdened. It was provided that the indebtedness of the county of Bingham, "at the date this act takes effect," should be apportioned between the new counties by deducting from the whole indebtedness all the moneys on hand or belonging to Bingham, or possessed or under its control, plus the value of all permanent

public property left within its new boundaries, and dividing the remainder between the new counties "in such proportion as the taxable property of each county bore to the entire taxable property of Bingham" before she was decapitated on the north and amputated on the south; and the assessment of 1892 was to be the standard for fixing values. (Laws 1893, p. 95, sec. 6; Laws 1893, p. 172, sec. 6.) Then, at the first meeting of the boards of commissioners of the three counties, they were each to appoint an accountant, etc.; the accountants were to meet within five days after their appointment at Bingham's county seat— i. e., Blackfoot; they were to be sworn to do their duty, make the necessary investigations to comply with the provisions of section 6 of both acts, and "immediately report the same in writing to the judge of the district court of the fifth judicial district." (See section 7 of both acts.) Let it be noted that no indefinite or continuing jurisdiction is here conferred on the judge of the district court. There are just three things that he is directed to do, and when he has done them, his work is completed. He can do nothing more, for his special jurisdiction takes or makes its exodus like a soul from a dead body. He fixes values (1), apportions a debt (2), and makes three certificates of what he has done under the legislative mandate (3). His certificates, in essence, are special findings and judgments. There never was but one time when the judge of the district court had the power and authority to do the three things mentioned above. That was the "first next regular session of the district court of Bingham county," after the accountants had been appointed by the three boards of commissioners. (Section 7, both acts of 1893, pages 96 and 172.) The act was mandatory in its provisions, and not directory merely. The things required to be done could not be just as well or just as legally done, six months or a year after the accountants were duly appointed under the legislative enactment. The question as to whether a statute is directory or mandatory is easy of solution and particularly so in the present case. The rule, briefly stated, is, that statutes will be considered directory when such a construction of them will not cause any advantage to be lost, or right to be destroyed, or benefit to be sacrificed either to the public or to any individual. (Cooley's Constitutional Limitations, 176; *Wheeler*

*v. Chicago,* 24 Ill. 108, 76 Am. Dec. 736.)   The plaintiff, in effect, is suing upon a judgment which has been paid.   No such action or proceeding can be maintained.   The plaintiff's own petition or pleading shows this fact, and brings the plaintiff within the legal principle that no action will lie upon a judgment which appears by the record to have been satisfied.   (*Pratt v. Jones,* 22 Vt. 314, 341.)   An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment.   (*Zacarious v. Palotti,* 49 Conn. 38.)   No bill of particulars need be filed.   (*Salem Gravel R. Co. v. Pennington,* 62 Ind. 175.)   In this case Bingham County exhibited its bill against Bannock county.   Bannock county, by its expert accountant then present, agreed that it was correct, and decree was entered, not for a further accounting, but for the amount Bannock county had·promised to pay, to wit, $94,929.65.   If the plaintiff had knowledge of any other items, or gross sums, pertaining to the ·indebtedness of Bingham to Alturas, or any other county, it was bound to bring them forward then and there, or else be barred forever concerning the same.

F. S. Dietrich, for Respondent.

Notwithstanding the lengthy rhetoric of appellant's brief, resistance to the respondent's claim is fractious in the extreme, and this appeal is wholly without merit.   The gist of the matter is: 1. That when Bannock county was created, old Bingham county was burdened· with a heavy debt, which Bannock county had assisted in creating, and a portion of which she was equitably bound to pay; 2. That in consideration thereof the legislature fixed the amount of said apportionment, and in the cretive act itself imposed on Bannock county the legal obligation of paying the same; 3. That at the time of the creation of Bannock county, besides other indebtedness of which Bannock county has paid its proportion and no more, Bingham county owed to Alturas county $7,033.68, with interest, amounting in all to approximately $9,000; 4. That at the time of the apportionment proceedings of August, 1893, the existence of this indebtedness was known and recognized by both counties, though

the exact amount was uncertain; 5. That said indebtedness was not apportioned at the time of the general apportionment because the amount thereof was uncertain, and for no other reason, and such uncertainty or contingency was due to no fault or negligence of Bingham county; 6. That at the time of said apportionment proceedings in August, 1893, Bannock county recognized its obligation to pay its proportion of said item, and conceded the impossibility of an adjustment thereof at said time, and agreed that the balance of the indebtedness should be apportioned, and that when this item should be ascertained it would pay its proportion thereof. There was a subsisting debt; Bannock county owed and owes a portion thereof; she agreed, and the judgment of the court was, that she should pay a certain fixed proportion thereof when the exact amount should be determined. The exact amount thereof has been determined and resistance is made in this proceeding not only to the payment thereof, but to the judicial certification of said amount. No concealments, no mistake, no deception, no fraud, no laches, no estoppel, no equitable defense could be or is attempted to be shown. It is sheer repudiation.

HUSTON, J.—By an act of the legislature of the state of Idaho, approved March 6, 1893, the county of Bannock was organized out of territory theretofore included in, and comprising a part of, Bingham county. Section 6 of said act is as follows: "The indebtedness of the county of Bingham at the date this act takes effect, shall be apportioned between the said county and the county of Bannock, as follows: All money on hand in the treasury of said county of Bingham and all money belonging to said county in the possession of or under the control of said county treasurer (except school money and school funds) and the value of all county property that may be within the boundary lines of Bingham county (less the value of such county property as may be permanent within the boundary lines of Bannock county as hereby created) shall be deducted from the total indebtedness of Bingham county, as aforesaid, and the remainder of the indebtedness shall be divided between said counties in proportion as the taxable property of each county bears to the entire taxable property of the present county of

Bingham, taking as a standard therefor the assessment for the year 1892; provided, that Bingham county shall retain all the present county property of Bingham county left within its boundaries after the creation of Bannock county as herein provided." (Laws 1893, p. 172.)    Section 7 of said act is as follows: "At the first regular meeting of the board of commissioners of Bannock and Bingham counties next following the establishment of Bannock county, they shall each appoint a competent accountant, who shall, within five days after their appointment, meet at the county seat of Bingham, and take the usual oath of office and proceed then and there to ascertain from the books and records of the auditor's, recorder's and treasurer's office, the whole amount of the indebtedness of Bingham county as provided in section 6, and shall make a list of all county property and shall immediately report the same in writing to the judge of the district court of the fifth judicial district, who shall at the first next regular session of the district court of Bingham county, fix a reasonable cash value of said county property and apportion said indebtedness according to section 6, and shall make out a certificate showing the values, debts and credits, and file one each with the chairman of the county commissioners of each county, and whatever amount is shown to be due from either of said counties to the other, the board of commissioners of the proper county shall cause county warrants to be drawn by the auditor of their county for the amount due, at their first regular session after the filing of the certificates aforesaid.    Said accountants shall be allowed a reasonable compensation for all their services rendered under the provisions of this act, to be audited and allowed by the commissioners of each county."

In compliance with the provisions of said section 7, the said district court did at its regular session in Bingham county, and on the eighth day of August, 1893, adjust and apportion said indebtedness between said Bingham county and said Bannock county, and did then and there ascertain and apportion the indebtedness of said Bannock county to Bingham county at the sum of $94,929.65, and did certify the same as by said act required.    And thereafter said Bannock county caused to be issued its warrant to Bingham county for said sum.    But it seems

that, at the time said district court made the adjustment and apportionment aforesaid, there was an indebtedness due from Bingham county to Blaine county, growing out of the disintegration of Alturas county some years previous, and by which Bingham acquired a portion of the territory theretofore belonging to Alturas county, and assumed a relative portion of the indebtedness of said Alturas county. The amount of this indebtedness of Bingham county had not, at the time of said apportionment and certification by the district court, been definitely ascertained. In reference to such unascertained indebtedness, the said district court made the following finding: "In addition to the above and foregoing finding, the court finds from the report of the accountants herein that there is some outstanding indebtedness from Bingham county to Alturas county; that such indebtedness cannot now be ascertained; that in case such indebtedness should ever be adjusted, either by arbitration or by a court of competent jurisdiction, the same should be apportioned among the three counties of Fremont, Bannock and Bingham, upon the same ratio as the present ascertained indebtedness is apportioned." Said indebtedness was subsequently ascertained, and said Bingham county was, by the mandate of this court, required to pay the same (*Blaine Co. v. Smith,* ante, p. 255, 48 Pac. 286); and it is to compel Bannock county to pay its portion thereof that this action is brought.

Bannock county knew as well on the eighth day of August, 1893, as she knows to-day, of the existence of the indebtedness of Bingham county to Alturas county (now Blaine). In fact, it might be said to have been almost a matter of history. The adjustment of the indebtedness of Alturas county has been prolific of litigation in the courts of this state for nearly a decade. Bingham county not only neglected to pay such indebtedness, but contested its validity, and only paid when compelled to do so by the mandate of this court. Bannock county was fully aware of the position taken by Bingham in this contention, and might, had it so desired, have paid its portion of such indebtedness at any time after the amount due from Bingham county to Alturas had been ascertained and promulgated. But Bannock county preferred to abide the result of the fight between Alturas and Bingham, and accept the benefits if any accrued, and avoid

the responsibilities in case Bingham county was defeated. Bannock county "would not play false, yet would wrongly win." Bannock county, having been carved out of territory theretofore belonging to Bingham county, must be supposed to have been conversant with the financial condition of the county, must have been aware of the obligation of Bingham to Alturas, and consequently of its (Bannock's) obligation to Bingham predicated thereon, and ought not to be allowed to avoid a just liability by a resort to mere technicalities. We listened with pleased attention to the eloquent and ingenious argument of counsel for the appellant, and have studied with careful interest his very able brief; but we are compelled to say that we find nothing in either which would, in our opinion, justify us in disturbing the action of the district court. The judgment of the district court is affirmed, with costs.

Sullivan, C. J., and Quarles, J., concur.