(February 25, 1898.)

## BLAINE COUNTY v. LINCOLN COUNTY.

[52 Pac. 165.]

BOARD OF ACCOUNTANTS—CLERICAL DUTIES.—Accountants appointed under the provisions of an act creating a new county out of part of the territory of another county, to apportion the indebtedness of the old county between it and the new county, upon a given basis, are not vested with either legislative or judicial functions, but perform mere clerical duties. *Blaine County v. Smith,* 5 Idaho, 255, 48 Pac. 286, cited and approved.

SAME—ACTS OF BOARD NOT FINAL.—The acts of a board of accountants appointed to apportion a debt between two counties upon a given basis, is not final, but may be impeached on the ground of fraud or mistake.

STATUTORY LIABILITY OF NEWLY CREATED COUNTY—JURISDICTION OF COURT TO IMPEACH REPORT OF ACCOUNTANTS.—A board of accountants provided by statute to apportion a certain indebtedness between two counties, on a given basis, acted and, in acting, failed to carry out the direction of such statute, by which failure on their part one county was defrauded of a large sum of money, which should, under the provisions of such statute, be paid to it by the other county. *Held,* that in such case, the courts have jurisdiction to grant relief. *Held,* further, that it was the duty of said board to carry out the provisions of the statute under which it was created, and in case of failure by such board to perform its duties, the court must, in a proper action therefor, grant relief by rendering such judgment as will carry out the will of the legislature as expressed in said statute.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Selden B. Kingsbury and Lyttleton Price, for Appellant.

Have the courts jurisdiction of this action? That is to say, has the plaintiff a right to call upon the courts to enforce this obligation according to the intent and purposes of the legislature notwithstanding the provision for the appointment of the accountants to compute the amount of it? (*Custer Co. v. Yellowstone Co.*, 6 Mont. 39, 9 Pac. 586; *Grant County v. Lake County*, 17 Or. 453, 21 Pac. 447; *Brewster v. Harwick*, 4 Mass. 278; *Forrest County v. Langlade County*, 78 Wis. 605, 45 N. W. 598; *Contra Costa County v. Alameda County*, 26 Cal. 642; *Rogers v. Hayes*, 3 Idaho, 597, 32 Pac. 259; *Nevada v. Board of Ormsby Co.*, 7 Nev. 392; *Morrow Co. v. Hendryx*, 14 Or. 397, 12 Pac. 806; *Nez Perces Co. v. Latah Co.*, 3 Idaho, 413, 31 Pac. 800; *People v. Hester*, 6 Cal. 679; *People v. Supervisors Eldorado Co.*, 8 Cal. 58; *Morgan v. Beloit*, 7 Wall. 613.) A coupon is an express contract for the direct payment to bearer of a certain sum of money at a certain time, and generally at a certain place. In this instance it was payable in the city of New York. It is a specific contract complete in itself, negotiable in form and possessing every attribute of commercial paper. When overdue, being an absolute promise to pay a certain sum of money on the date named, it bears interest from the date of its maturity. (5 Thompson on Corporations, 6107; 6108, 6111-6114; note on coupons, etc., 64 Am. Dec. 428; *Clark v. Iowa City*, 20 Wall. 583-589; *Morris Canal Co. v. Fisher*, 1 Stock. Ch. 667, 64 Am. Dec. 428; *Welsh v. First Div. etc. R. R.*, 25 Minn. 320; 2 Parsons on Bills and Notes, 115, 393; *Gelpcke v. Dubuque*, 1 Wall. 206; *Thompson v. Lee County*, 3 Wall. 327; *City of Aurora v. West*, 7 Wall. 82. See brief of plaintiff in error in this case on p. 43; *Town of Genoa v. Woodruff*, 92 U. S. 502; *Mercer Co. v. Hackett*, 1 Wall. 83; *Knox Co. v. Aspinwall*, 24 How. 376; *White v. Vermont etc. R. R.*, 21 How. 575; *McCoy v. Washington County*, 7 Am. Law Reg. 193, 3 Wall. Jr. 381, Fed. Cas. No. 8731; 3 Story on Bills, 336; *Hollingsworth v. Detroit*, 3 McLean, 472, Fed. Cas. No. 6613; *Delafield v. Stevens*, 2 Hill, 177; *Williams v. Sherman*, 7

Wend. 112; *Amy v. Dubuque,* 98 U. S. 470; *Koshkonong v. Burton,* 104 U. S. 668; *Pana v. Bowler,* 107 U. S. 529, 2 Sup. Ct. Rep. 704; *Holden v. Freedman's etc. Co.,* 100 U. S. 72; *Lawton v. South Carolina R. Co.,* 2 S. C. 248.    See Statutes of Minnesota, Wisconsin and Pennsylvania on interest.)    Interest on coupons after maturity.    The law, as construed by the highest court of the state, at the time of the issue of the bonds enters into and forms a part of the contract, between the corporation and the bondholder.    (15 Am. & Eng. Ency. of Law, 1269, note 7; *Alcott v. Supervisors,* 16 Wall. 386; *Douglas v. Pike County,* 101 U. S. 677; *Anderson v. Santa Ana Township,* 116 U. S. 633, 6 Sup. Ct. Rep. 413.)    Bonds and coupons like these by universal usage and consent have all the qualities of commercial paper.    (*Mercer Co. v. Hackett,* 1 Wall. 83; *Knox Co. v. Aspinwall,* 24 How. 376; *White v. Vermont etc. R. R. Co.,* 21 How. 575; *McCoy v. Washington Co.,* 7 Am. Law Reg. 193, 3 Wall. Jr. 381, Fed. Cas. No. 8731; *City of Aurora v. West,* 7 Wall. 82.)

P. L. Williams and Vic Bierbower, for Respondent.

In this case, although it may be shown by the evidence that the accountants may have made some mistake in their accounting, and even though it may be admitted that the court, upon a proper complaint, might have jurisdiction to correct such error, no relief therefor can be had in this case, because there is no allegation of mistake or allegation of facts showing that any mistake has been made.    On the contrary all the allegations of error and wrong are distinctly charged as intentional and fraudulent.    (Bliss on Code Pleading, 2d ed., secs. 159-162; Pomeroy on Remedies, 2d ed., secs. 84, 553, 554, 559; *Rome Exchange Bank v. Names,* 5 Abb. Ct. App. Dec. 83; *Hunt v. Daniel,* 6 J. J. Marsh. 399; *McMichael v. Kilmer,* 76 N. Y. 36; *Dudley v. Scranton,* 57 N. Y. 424.)    This power of the legislature to create, divide, consolidate at pleasure, or abolish at pleasure, counties and other municipal corporations, carries with it the power on division to provide in the legislative discretion for the division of its properties and liabilities, and such power of the legislature is final and conclusive as to such division, and, if no di-

vision is provided for, it must be assumed that the legislature concluded that none should be made. (*Windham v. Portland,* 4 Mass. 384; *Hampshire v. Franklin,* 16 Mass. 76.) The legislature itself designated accountants or agents to carry out the legislative will in so far as ascertaining amounts and working out the mere matter of detail. If, then, this agency of the legislature make a mistake or fail to carry out the legislative purpose, it is submitted that within the general principles of the doctrines laid down in preceding cases the mistake is to be corrected by the legislature itself, and this is distinctly declared in the case of *Orange County v. Los Angeles County,* 114 Cal. 390, 46 Pac. 173. (*Los Angeles Co. v. Orange Co.,* 97 Cal. 329, 32 Pac. 316; *Tulare Co. v. Kings Co.,* 117 Cal. 195, 49 Pac. 8; *Sedwick Co. v. Bunker,* 16 Kan. 498.)

QUARLES, J.—By Act of March 18, 1895 (Sess. Laws 1895, pp. 170-174), creating Lincoln county out of territory of Blaine county (formerly Alturas and Logan counties), it is provided that Lincoln county shall pay to Blaine county a portion of the debt of said latter county proportionate to the assessed valuation of the property in Lincoln county taken from Blaine county, and to be ascertained from the assessment-rolls of the former counties of Logan and Alturas for the year 1894. The act provides for the appointment of accountants to ascertain the debt to be apportioned, the per cent of such debt to be ascertained from said assessed valuation of property, and the fixing of the amount to be paid to Blaine county by Lincoln county. Part of section 5 of said act is as follows:

"Said accountants must meet at the town of Hailey on the first Monday of May, 1895, and after taking the usual oath of office, they must proceed to ascertain and determine: "1. The entire amount of taxable property assessed in Alturas and Logan counties for the year 1894, as shown by the assessment-books of said counties; 2. From the assessment-books of Logan county they must ascertain and determine the amount of taxable property assessed within the limits of the county of Lincoln, as hereinbefore desribed; 3. They must ascertain the amount of cash in the treasuries of Alturas and Logan counties at the date of the passage of this act which was available for the pay-

ment of the indebtedness of said counties, whether represented by outstanding bonds, warrants or otherwise, and the amount of interest accrued and unpaid at said date; 4. They must then deduct from the amount of the indebtedness, so ascertained and determined, the amount of cash in the treasuries of Alturas and Logan counties at the date of the passage of this act which was available for the payment of the indebtedness of said counties, or any part thereof; 5. They must proceed to ascertain and determine the amount of indebtedness of the counties of Logan and Alturas after deducting the cash available for the payment of the same, or any part thereof, and apportion between the counties of Blaine and Lincoln the remaining indebtedness in the same ratio that the taxable property of the counties of Blaine and Lincoln, so ascertained and determined bears to the entire amount of taxable property within the limits of the county of Blaine as shown by the assessment-books of Alturas and Logan counties for the year 1894."

Section 6 of said act is as follows: "At their regular April session, 1895, the commissioners of each of the counties of Blaine and Lincoln must appoint each a suitable person to examine and appraise the courthouse and jail in the town of Hailey. Said appraisers shall meet at said town of Hailey on the first Monday in May, 1895, and ascertain and determine the present cash value of said courthouse and jail, and the half block of ground upon which they are situated, and immediately report to the accountants herein provided for, the amount at which they have appraised said property, and the accountants must charge the amount so reported to the county of Blaine, and add it to her ratable portion of the indebtedness ascertained, as herein required."

The act then provides that county commissioners "must cause warrants to be issued by the auditor of Lincoln county in favor of Blaine county to the full amount of the ratable proportion of the indebtedness of said Blaine county, as ascertained and determined in the manner hereinbefore described," etc. (Laws 1895, p. 173, sec. 7.) Under said act accountants were appointed, who found and reported the assessed valuation of property in Blaine county to be $1,419,898, and in Lincoln $990,977,

making fifty-eight and nine-tenths per cent of the property in Blaine and forty-one and one-tenth per cent in Lincoln. The accountants found the indebtedness of Blaine county to aggregate $567,310.74. From this sum they deducted the cash in the treasury of Blaine county, amount of debts due Blaine county from Elmore and Bingham counties, and other items, amounting in all to $155,929.02, leaving the amount to be apportioned at $411,381.72, and Lincoln's share of same to be paid to Blaine fixed at $127,377.89; this result being reached by adding to Blaine's ratable portion of said debt, $41,700, the value of the Blaine county courthouse as fixed by said appraisers, and by deducting the same amount from Lincoln's ratable portion of said debt. Blaine county refused to accept the report of said accountants as correct, and refused to settle on the basis of said report, and October 18, 1895, commenced this action to have determined and decreed the actual amount to be paid by Lincoln county to Blaine county under the provisions of said act. By agreement of both parties, the cause was heard by Charles S. Kingsley, as referee, who heard and reported the evidence, with his findings thereon, and the trial court thereafter rendered judgment, but rejected the report of said referee in part and adopted it in part. Said referee found as follows: Assessed valuation for 1894: Blaine county, $1,396,-655.73; Lincoln county, $1,014,032.99. Blaine's percentage, .57936; Lincoln's percentage, .42064. The referee then found the amount of indebtedness owing by Blaine, including interest thereon to March 18, 1895, to be $603,490.45. From this amount the referee deducted $36,625.02, the amount of cash that he found to be in the treasury of Blaine (formerly Alturas and Logan) county, applicable to the payment of said indebtedness, and the further sum of $31,000, the value of Blaine county's courthouse, as found by him; leaving the amount to be apportioned between the said counties at $535,865.43; placing Blaine's proportion at $310,459, and Lincoln's at $225,406.43.

The district court held—correctly, we think—that the accountants were not authorized to deduct from the indebtedness of Blaine county prior to making the apportionment the sums due from Elmore and Bingham counties. The district court

corrected the report of the accountants by deducting from the aggregate indebtedness of Blaine county, as cash in the county treasury, $37,279.34, instead of the item, "Blaine county re- sources, $155,929.02," but held the report of said accountants in all other respects binding upon both counties.  The report of said accountants is attacked by the complaint as being incorrect, false and fraudulent.  The defendant contended that the court had no jurisdiction, for the reason that the legislature is au- thorized by the constitution to divide counties and apportion the indebtedness, and that to carry out the intention of such legisla- tive enactment the legislature could employ the agency used in this case.  This contention is correct, and so regarded by the district court.  But the district court held that the "stating of the account between the two counties" necessarily required the exercise of judgment on the part of the accountants, whose acts could not be attacked in a proceeding of this kind, which con- clusion was not correct.  Having divided one county, and created a new one out of part of the old one, and provided for the apportionment of the outstanding indebtedness of the old county between the two upon a given basis, it was proper for the legislature to provide agencies to carry its will into effect. But the accountants provided were not clothed with either legis- lative or judicial functions.  The acts required of them were purely clerical.  They were required to ascertain the assessed valuation of the property in the old county for the year of 1894, as shown by the assessment-rolls, and to ascertain the per cent of same in each of the counties litigant.  This was mere mat- ter of computation.  Then said accountants were to ascertain the amount of the outstanding indebtedness of Blaine county, deduct therefrom the cash in the treasury of the former counties of Alturas and Logan (both then merged into Blaine) applica- ble to the payment of said indebtedness, and then to apportion the balance of said indebtedness between Blaine and Lincoln counties in the proportion that the assessed valuation of prop- erty for 1894 in one county bore to that in the other.  Said accountants were then to add to Blaine county's ratable portion of said debt, so ascertained, the amount at which the appraisers had valued the Blaine county courthouse.  All of said acts were

clerical, and said acts were directed to be done in the above-named order. The accountants were not authorized to deduct anything from the indebtedness to be apportioned, except the cash in the treasury applicable to the payment of same. The action of said accountants was not final. They failed to carry out the expressed will of the legislature, and did not do those things which the legislature required them to do. They did not find the true valuation of the property in the two counties. They did not find the true ratio existing between the assessed valuation of the property in the two counties. They apportioned the debt on the wrong basis, and then added to the amount apportioned to Blaine the valuation $41,700, found by the appraisers as the value of the Blaine county courthouse, and deducted the same amount from the amount apportioned to Lincoln county. The result of their action was to reduce the amount which Lincoln county was to pay to Blaine, something over $100,000. Whether the said accountants intended to commit a fraud upon the rights of Blaine county, or their action was the result of mistake or inadvertence, is immaterial, as the result defrauded Blaine county, and, if not actual fraud, is legal fraud. Said accountants made numerous errors, all of them against one and in favor of the other county, and under such circumstances perhaps actual fraud should be presumed.

The position of the respondent that the court has no jurisdiction of the subject matter of this action, and no power to grant relief to the appellant, the action of the accountants being final, is not tenable. The legislature fixed the rights of both parties. It would be a travesty on law and the administration of justice to say that under the circumstances of this case the expressed will of the legislature could be defeated by said accountants, and that the courts are powerless to grant relief to the injured party. (See *Blaine Co. v. Smith,* 5 Idaho, 255, 48 Pac. 286.)

There is nothing in the argument that the appellant should resort to the legislature for relief. The legislature has acted in the matter. It has fixed the rights of both parties, and provided the standard by which Lincoln county's liability to Blaine county is to be determined. It was the duty of said accountants to do those things, and only those things, required by said

act of the legislature. They did not obey the mandates of the legislature, and the courts have jurisdiction to grant relief, and to carry out the expressed will of the legislature under the circumstances of this case. It will be seen by a careful reading of the said act that after the apportionment of the debt between the two counties the value of the Blaine county courthouse was to be added to the amount of the indebtedness apportioned to Blaine county. But, as it is not provided in said act that Blaine county shall pay the value of said courthouse to any person, natural or artificial, or that the value thereof should be deducted from the amount to be paid by Lincoln county to Blaine county, the fixing of a valuation on the said courthouse would seem to be an idle act, and the amount of such valuation immaterial. It would, perhaps, have been equitable to have deducted the value of said courthouse from the aggregate indebtedness before apportionment, but the legislature did not so provide, and neither the said accountants nor the court can add to or take from the provisions of the legislative act under consideration.

We have carefully considered the evidence in this case, and think that the findings of the said referee as to the assessed valuation of property, the *pro rata* share of each of the counties litigant, the amount of the outstanding indebtedness of Blaine county, and the amount of cash in the county treasury applicable to the payment of said indebtedness fully supported by said evidence. The said referee erroneously added the value of the Blaine county courthouse to the cash in the treasury applicable to the payment of Blaine's indebtedness; and he should not, for the reasons hereinbefore given, have deducted the value of said courthouse from such indebtedness before apportioning it between the two counties. In determining the amount of the outstanding indebtedness of Blaine county the referee computed simple interest on same, but failed to compute or allow interest on interest coupons past due. The action of the referee in this respect was correct. Chapter 6, title 13 of the Civil Code, under which the bonds in question were issued, provides that such bonds shall be paid "at the office of the county treasurer, or at such bank in the city of New York as may be designated

by the board of county commissioners, at the option of the holder thereof." There is no allegation or proof in the record before us that said bonds and their coupons were payable in New York, hence we are compelled to hold that said bonds and coupons are Idaho contracts, and to be performed in Idaho. Section 1265 of the Revised Statutes, prohibits compound interest. To have authorized the allowance of compound interest, or interest on the interest coupons, it should have been alleged and shown that said interest coupons were, by the contract, payable in New York, and that by the laws of New York interest was allowable on them. Such conditions were suggested by counsel for appellant in their argument, but such suggestions were not proper, and cannot be considered. In the absence of allegation and proof to the contrary, the presumption is that the said bonds and coupons are payable and to be paid where made. Compound interest not being allowable in Idaho, neither the said accountants nor the court can compute interest on said coupons in estimating the amount of indebtedness of Blaine county to be apportioned. The outstanding indebtedness of Blaine county at the time the same should have been apportioned between the counties litigant was the sum of $603,490.45. The cash in the county treasuries applicable to the payment of said indebtedness was the sum of $36,625.02. Balance to be apportioned between the two counties, $566,865.43. Lincoln's *pro rata* thereof (.42064 per cent) is $238,446.27, for which amount Blaine county should have had judgment. The judgment appealed from is reversed, and the cause is remanded to the district court, with instructions to enter judgment in favor of the plaintiff, Blaine county, and against the defendant, Lincoln county, for the sum of $238,446.27, to be paid by the warrants of said Lincoln county, issued in the manner and amounts as provided in section 7 of said act of March 18, 1895, all of such warrants drawing interest from March 18, 1895, until paid; and costs of suit incurred by plaintiff in the action. Costs of this appeal awarded to the appellant.

Sullivan, C. J., and Huston, J., concur.